## CLAIMS AGAINST THE OHIO DEPOSIT OF A FOREIGN SURETY COMPANY.

Common Pleas Court of Franklin County.

TIMOTHY S. HOGAN, ATTORNEY-GENERAL, v. THE EMPIRE STATE SURETY COMPANY.

Decided, December 15, 1915.

*Foreign Surety Becomes Insolvent—Conflicting Claims to its $50,000 Ohio Deposit—Creditors of a Contractor Bonded by the Company— Held to have a Lien Superior to that of the Superintendent of Insurance of the Company's Home State.*

Under a bond by a foreign surety company, guaranteeing performance of a contract and payment of all claims for labor and material furnished the contractor, the deposit required as a condition precedent to doing business in Ohio inures, in case of insolvency of the surety company, is for the benefit of all who have claims against the contractor, and the lien of such claimants is superior to that of the superintendent of insurance in the surety company's home state, who asserts title to the deposit for the equal benefit of all policy holders of the company.

*Timothy S. Hogan*, Attorney-General, for plaintiff.
*Booth, Keating, Peters & Pomerene*, contra.

DILLON, J.

This action is brought by the Attorney-General under a special statute to determine what shall be done with a deposit of $50,000 made by the Empire State Surety Company, a New York corporation, with the superintendent of insurance of Ohio, to secure the contracts of the defendant in Ohio.

This deposit was made in May, 1905, in the form of a Cleveland, Ohio, bond. Subsequently the said surety company failed

and ceased to do business and was placed in the hands of the superintendent of insurance of the state of New York for liqui-dation.

The prayer is that all persons be made parties to make any claim to any part of this fund; that the deposit be subjected to the payment of any liabilities which this company may have in this state, and that the deposit itself be reduced to cash, and that an order be made to distribute it among those persons entitled thereto.

To this petition the superintendent of insurance of New York answers, claiming that he and he only is entitled to this money and that the same should be ordered turned over to him for the equal benefit and protection of the policy holders of this company in proportion to their respective claims.

When this company was actively engaged in the business of insurance in Ohio, one Wells, in January of 1910, entered into a written contract with the United States of America for the reconstruction, remodeling and repairing of the United States Post Office at Lima, Ohio, and on February 1st, 1910, in compliance with the statutes of the United States of America, gave bond in the sum of $28,000, with the Empire State Surety Company as surety, conditioned that said contractor "shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided in such contract." A number of those persons furnishing material, etc., have filed intervening cross-petitions setting forth the amount in which Wells, the contractor, is indebted to them for the materials, and that final payment has been made by the United States to Wells, leaving these various debts unpaid. To all these cross-petitions the superintendent of insurance of New York state has filed answers, all involving the same legal question, and it is upon demurrer to these answers that the case is submitted here.

The mere fact that a chief contractor gives to the owner a bond which is conditioned, among other things, that he pay all his debts or those who furnish materials and labor, does not inure to the benefit of those sub-contractors and laborers. This has been decided many times in this state, and recently in the case of *Roofing Co.* v. *Gaspard*, 89 O. S., 185.

Reliance in this case, however, is made upon the special provisions of the statutes of Ohio, and also of the federal statute, which will be considered later.

In the briefs for the defendant, superintendent of insurance of New York, it is contended that the pleadings show that this company was only authorized, and therefore could only legally act in this state in indemnifying for death, or personal injury, and had no power to sign a bond of this character, but this superintendent admits that the company was authorized to do business as alleged in the petition, and the allegations here with respect to its powers are not exclusive, and therefore this part of the defendant's contention can not be sustained.

Moreover, the answer admits that the said company was admitted to do business in this state under Section 9510, General Code. It is claimed that these cross-petitioners who furnished material were not policy holders; that the only policy holder was the United States Government. A strict construction of the statute might sustain this claim, but I do not deem it vital here. Under Section 9510, General Code, a company could be organized and admitted for a great variety of purposes, among others—

"to guarantee the performance of contracts (other than insurance policies) and execute and guarantee bonds and undertakings required or permitted in all actions or proceedings, or by law allowed, make insurance to indemnify employers against loss or damage for personal injury or death resulting from accidents to employees or persons other than employees, and to indemnify persons and corporations other than employers against loss or damage for personal injury or death resulting from accidents to other persons or corporations. But a company of another state, territory, district or country admitted to transact the business of indemnifying employers and others in addition to any other deposit required by other laws of this state shall deposit with the superintendent of insurance for the benefit and security of all its policy holders fifty thousand dollars," etc.

My interpretation of this last paragraph is that the deposit was required not only for indemnifying employers against loss, but for indemnifying others, and therefore the deposit was for "any others" who had any claim against the bond given by such company.

The citizenship of the parties to the action is not in any way limited by this statute, but it is designed to protect those per-

sons who do business in this state and who accept the bond of a foreign company. I have therefore concluded that the fact that some of these cross-petitioners were non-residents of Ohio, and the fact that the building in question was not a part, strictly speaking, of the state of Ohio, that is to say, not strictly under its jurisdiction, does not make any difference in the application of our statutes. The purpose of the statute is too plain to require much elucidation.

By Section 641, General Code, it is expressly and plainly provided that if any corporation, required by law to make a deposit with the superintendent of insurance to secure the contracts of said company or for any other purpose, fails to pay any of its liabilities upon such contracts or other obligations according to the terms thereof, after the liability thereon has been determined, or if such company ceases to do business and leaves unpaid any such liability, the Attorney-General shall commence a civil action in the Court of Common Pleas of Franklin County to determine the rights of all the parties, and subject this deposit to the payment or satisfaction of all liabilities, and distribute the fund among the persons entitled thereto, and a subsequent section, 656, provides how these liabilities or the fact as to whether there be any liabilities, or whether they have been paid, is to be determined.

Whether or not the intervening cross-petitioners are policy holders within the meaning of Section 9510 may be questioned so far as that statute is concerned, as is indicated, although the court does not feel that it need go into that question.

The United States statute, in the court's opinion, has settled that question. The act of Congress, approved August 13th, 1894, and subsequently amended, provides specifically that thereafter any person entering into a contract with the United States for the construction, repair or remodeling of any public building in the United States must before commencing such work execute the usual penal bond with good and sufficient sureties, *with the additional obligation* that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor and materials; and it is further provided that any person who has furnished any such labor or materials, payment for which has not been made, shall have the right to intervene

and be made a party to any action instituted by the United States on such bond, and to have their rights and claims paid thereon, subject, however, to the priority of the claim of the United States.

It is further provided by said act that if the full amount of the liability of the surety on the bond is insufficient to pay the full amount, then after paying the full amount due the United States the remainder shall be distributed *pro rata* among said interveners.

It is further provided that if no suit is brought by the United States within six months any persons supplying the contractor with labor and materials may prosecute and obtain the same relief.

The entire statute need not be quoted here, but it can be tersely said that the statute gives the plain right to contractors against this company, and it only remains to be considered as to whether or not with that right the contractors have a special lien upon this fund of $50,000.

Taking this United States statute last quoted, and the statutes of Ohio together, I have come to the conclusion that it does give such contractor a lien on this fund; that that was the broad purpose as expressed in the broad terms of our statutes, for which this money was held.

I need not pass upon the question as to the jurisdiction of the receiver appointed by the court in New York. We are all familiar with the fact that the appointment of a receiver in one state does not operate *ipso facto* without its jurisdiction. Ancillary receivers are sometimes appointed to assist in other jurisdictions, but the appointment of this receiver in New York State, or the action of the superintendent of insurance in New York for liquidation, is without any extra-territorial effect with respect to the rights of claimants to the deposits of insurance companies in other states. Otherwise the laws of the various states in that regard would be completely nullified.

Some of these cross-petitioners have filed their claims with the superintendent of insurance of New York, and it was claimed that they are now estopped to payment here. I can not adopt this view. I think these claimants have a perfect right to file their claims with every official who has property and the power

of distribution of this surety company, and that if the amount deposited in this state is insufficient for payment in full they have a right to file their claims for the balance due them with the superintendent of insurance of New York.

Counsel in preparing the decree will provide for the appropriate action to convert the bond into cash and to distribute the proceeds, and if counsel then do not agree upon the appeal bond the court will fix it.